```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

```
THE WORLD WIDE STREET           :
PREACHERS' FELLOWSHIP,
RON McRAE, and MARK A. DIENER,  :
         Plaintiffs
                                :
         vs.                         CIVIL NO. 1:CV-05-2565
                                :

STEPHEN R. REED, in his official:
capacity as Mayor of the City of
Harrisburg; TINA MANOOGIAN-KING,:
in her official capacity of
Director of Parks and Recreation:
for the City of Harrisburg and
in her individual capacity; and :
CAPTAIN BALDWIN, LIEUTENANT ROY,
OFFICER STEPHANIE BARRELET, and :
OFFICER JANE DOE, in their
official and individual         :
capacities,
         Defendants             :
```

*M E M O R A N D U M*

I.  *Introduction*.

Plaintiffs are the World Wide Street Preachers' Fellowship (SPF), a ministerial fellowship of Christian street preachers, and Mark A. Diener, a member of SPF and a street preacher. Diener and members of SPF often preach at public events. One such event is PrideFest, an annual festival held in Harrisburg, Pennsylvania, scheduled this year for July 29, 2006.

We have before us Plaintiffs' motion for a preliminary injunction. In anticipation of the upcoming PrideFest, the motion requests that we enjoin Harrisburg's noise ordinance both facially

and as applied, and Pennsylvania's defiant trespass statute as applied.

II.  *Background*.

PrideFest is held in Riverfront Park, a public park in the City of Harrisburg that runs in a north-south direction between the Susquehanna River on the west and Front Street on the east.  Front Street is a three-lane, one-way street for southbound traffic.  Typically, PrideFest organizers have obtained permits from the city to hold PrideFest at the southern end of the park in an area roughly shaped like a narrow rectangle.  The permitted area's width is the western curb line of Front Street to the top of the river's embankment.

The requested relief is based on what happened to Ron McRae, another street preacher and a director of SPF, while he was preaching at the July 2005 PrideFest.[1]  At one point during the day, McRae was using a megaphone to preach at those in the festival.  He was standing on the sidewalk in the 300 block of South Front Street across the street from the festival, the area of South Front Street closest to the festival.  (Doc. 29, preliminary-injunction-hearing transcript, p. 48).  That portion

---

[1]  McRae was a plaintiff but when confronted by Defendants' motion under Fed. R. Civ. P. 12(b)(6) to dismiss under *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), McRae was voluntarily dismissed as a plaintiff under Fed. R. Civ. P. 41(a)(1).

of the sidewalk is privately owned by Pinnacle Health, a health-care provider. The privately owned portion is along the width of two Pinnacle Health buildings that faces Front Street and goes to the eastern curb line of the street. However, the sidewalk is contiguous with other portions of the sidewalk, both north and south of the Pinnacle Health buildings, that run along Front Street.[2] The police requested that McRae turn down the volume of his megaphone, which he did. He then continued to preach.

However, the police had received noise complaints about McRae's preaching. The police contacted Pinnacle Health security to confirm that the preachers were standing on Pinnacle Health property. Pinnacle Health confirmed that it owned the sidewalk and requested that the preachers be removed. A Pinnacle Health security officer testified at the preliminary-injunction hearing that this was for liability reasons, that Pinnacle Health did not want to be liable if a preacher was injured while standing on its property. Defendant Baldwin, a police captain, testified at the hearing that McRae could have used the sidewalk as long as he "used the property for egress or regress and not simply stand in that area of private property . . ." (Doc. 29, p. 52).

---

[2] That the relevant portion of the Pinnacle Health property is just the sidewalk on Front Street is confirmed by Exhibit A to Plaintiffs' preliminary injunction, a DVD recording of certain events involving the street preachers. The pertinent portions are at the 18-minute, 45-second mark and the 39-minute, 20-second mark of the DVD.

3

After being warned, McRae refused to leave and was arrested for defiant trespass under 18 Pa.C.S. § 3503(b)(1)(i).[3] He was also charged with a violation of Harrisburg's noise ordinance, with a citation to section 3-343.2(a) of that ordinance. *See* Harrisburg, Pa., Ordinance No. 43-1999 (Nov. 10, 1999).[4] McRae was convicted of both charges before the district

---

[3] In pertinent part, section 3503(b)(1)(i) reads as follows:

> **(b) Defiant trespasser.**--
>
> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
>   (i) actual communication to the actor;
>
> . . . .

[4] The pertinent provisions of the ordinance read as follows:

> 3-343.1   LOUD, DISTURBING AND UNNECESSARY NOISE PROHIBITED
>
> It is unlawful for any person to make or continue to make, or cause to be made or continued, within the City, any loud or unnecessary noise which may reasonably be anticipated to annoy, disturb, injure or endanger the comfort, repose, peace, health or safety of others, whether due to volume or duration, or both.
>
> 3-343.2   SPECIFIC PROHIBITED CONDUCT
>
> Without limitation as to the types of noise-producing acts which are in violation of this Chapter, noise produced by the following acts are declared to be loud, disturbing, and unnecessary noise in violation of this Chapter:

4

(a) <u>Radios and other amplified music.</u>  Use or operation of, or permitting the use or operation of, any radio, CD player, television set, musical instrument, stereo (phonograph), or other machine or device designed or intended to produce or reproduce sound in such manner as to disturb the peace, quiet and comfort of residential inhabitants or at any time with louder volume than is necessary for convenient hearing by the person or persons who are in the room, vehicle, or chamber in which such machine or device is operating and who are voluntary listeners thereto.  The operating of any such machine or device in such manner as to be plainly audible at a distance of fifty feet from the source shall be prima facie evidence of a violation of this chapter.

(b) <u>Loudspeakers and/or amplifiers upon public streets.</u>  Use or operation of, or permitting the use or operation of, any radio, CD player, television set, musical instrument, stereo (phonograph), loudspeaker, sound amplifier, or other machine or device designed or intended to produce or reproduce sound, which is audible upon the public streets for the purpose of commercial advertising or attracting the attention of the public to any thing or activity or to any building or structure.

(c) <u>Yelling, shouting, etc.</u>  Yelling, shouting, whistling or singing on the public streets at any time or place so as to annoy or disturb the quiet, comfort, or repose of persons in any office or in any dwelling or residence, or any persons in the vicinity.

. . . .

<u>SECTION 3.</u>   <u>SEVERABILITY.</u>

If any provision, sentence, clause, section, or part of this ordinance or the application thereof to any person or circumstance is for any reason found to be unconstitutional . .

justice and appealed to the Court of Common Pleas of Dauphin County, Pennsylvania. The state trial court held a hearing on May 17, 2006, and a decision is pending.

Captain Baldwin testified at the preliminary-injunction hearing that the police had had three complaints of noise about McRae. One had come from within the festival, one from neighbors about a half-block away, and a third from a woman visiting a residence very near to where McRae was preaching. (Doc. 29, pp. 43-44, 47-48). At the hearing in Dauphin County Court, she testified that McRae had amplified his speech so that it would rise above the traffic noise, (Dft.'s Ex. 8, p. 36), but backed away from this point at the preliminary-injunction hearing. (Doc. 29, pp. 53-55). At the Dauphin County Court hearing, the third complainant testified that McRae was "yelling and screaming" and that she thought she could hear music coming from him. (Dft.'s Ex 8, pp. 7, 13).

Plaintiff Diener testified at the preliminary-injunction hearing that he had preached at the 2005 PrideFest, standing on the sidewalk and sometimes using a megaphone. He planned on returning this year but was fearful of being arrested as McRae had been last year.

---

. such unconstitutionality . . . shall not affect or impair any of the remaining provisions, sentences, clauses, sections or parts of this ordinance. . . .

III.  *Standard For a Preliminary Injunction*.

> In order to obtain a preliminary injunction, plaintiffs must show both (1) that they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits. A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require.

*Adams v. Freedom Forge Co.*, 204 F.3d 475, 484 (3d Cir. 2000)(cited cases omitted).

Further, "[t]o show irreparable harm, the party seeking injunctive relief must at least demonstrate 'that there exists some cognizable danger of recurrent violation' of its legal rights," *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997)(quoted case omitted), "'a real or immediate threat'" that the violation will reappear "in the near future." *Id.* This rule applies even in First Amendment cases. *Id.*

"If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [nonmoving parties] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)(brackets added).

IV.   Discussion.

    A. *Plaintiffs' Request for Injunctive Relief Is Not Barred by the* Rooker-Feldman *Doctrine, Res Judicata or Collateral Estoppel*.

Defendants argue that Plaintiffs' request for injunctive relief is barred by the *Rooker-Feldman* doctrine, res judicata (claim preclusion) and collateral estoppel (issue preclusion). We disagree.

The *Rooker-Feldman* doctrine does not apply here because as the Supreme Court has stated:

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 1521-22, 161 L.Ed.2d 454, 461 (2005). In the instant case, McRae, the state-court loser (so far), is not a party, having been voluntarily dismissed as a plaintiff in response to Defendants' *Younger* argument.[5]  Nor are the remaining

---

[5] In relation to the Supreme Court's reference to other "doctrines that allow federal courts to . . . dismiss proceedings in deference to state-court actions," it might appear that, even though McRae has been removed as a party, SPF and Diener, sharing the goals of this lawsuit with McRae, would be subject to derivative abstention under *Younger*. *See Hicks v. Miranda*, 422 U.S. 332, 348-49, 95 S.Ct. 2281, 2291, 45 L.Ed.2d

8

federal defendants "inviting district court review and rejection of" the state-court "judgment[ ]."

As for claim preclusion and issue preclusion, while they differ on some elements, these doctrines share a common one; there must have been a final, valid judgment in the previous action. *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006)(claim preclusion); *Witkowski v. Welch*, 173 F.3d 192, 198-99 (3d Cir. 1999)(issue preclusion). Here, there has not yet been a final judgment. The appeal is still pending in the common pleas court. Hence, neither claim preclusion nor issue preclusion applies here. We thus turn to the merits of the preliminary-injunction motion.

> B.  *The Merits of the Facial Challenge to the Noise Ordinance on the Bases of Vagueness and Overbreadth.*

Plaintiffs challenge the noise ordinance on its face on the grounds of vagueness and overbreadth.

---

223, 238-39 (1975)(*Younger* abstention can apply when the interests of the federal plaintiffs are intertwined with those of the state criminal defendant); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928-29, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648, 658 (1975)(plaintiffs in the federal lawsuit, similar business enterprises, having a common legal goal are not all bound by *Younger*'s application to one of them "when they are unrelated in terms of ownership, control and management"). However, the Third Circuit has interpreted *Hicks* as requiring an employer-employee relationship between the federal plaintiff and the state-court criminal defendants before *Younger* abstention applies. *See Sullivan v. City of Pittsburgh*, 811 F.2d 171, 177-78 (3d Cir. 1987). It has also interpreted *Doran* "as requiring unitary treatment under Younger "only where there exists 'an identity of economic activities and interests.'" *Id.* (quoted case omitted). Neither of these factors is present here.

"A statute is void for vagueness if it 'forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Tykarsky*, 446 F.3d 458, 472 (3d Cir. 2006)(quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). The doctrine is intended to give actual notice to citizens of the conduct prohibited but also guards against arbitrary enforcement by police officers. *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983).

Plaintiffs argue that the noise ordinance is unconstitutionally vague because it proscribes noise that would "annoy, disturb, injure or endanger the comfort . . . of others," section 3-343.1, or "disturb the peace, quiet and comfort" of others, section 3-343.2(a), or "annoy or disturb the quiet, comfort, or repose of . . . persons in the vicinity." Section 3-343.2(c). Plaintiffs assert that this wording necessarily turns on the subjective interpretation of those observing the speech or noise and hence cannot guide a person in determining whether they are abiding by the law, or prevent a police officer from arbitrarily enforcing the ordinance.

In support of this argument, they cite *Fratiello v. Mancuso*, 653 F. Supp. 775, 790 (D.R.I. 1987); *Dae Woo Kim v. City of New York*, 774 F.Supp. 164, 170 (S.D.N.Y. 1991); *Gardner v.*

*Ceci*, 312 F. Supp. 516, 518 (E.D. Wis. 1970); *Dupres v. City of Newport*, 978 F. Supp. 429, 433 (D.R.I. 1997); and *Lionhart v. Foster*, 100 F. Supp. 2d 383, 389 (E.D. La. 1999).

Of these cases, *Dupres* supports Plaintiffs. In that case, the district court held that an ordinance making unlawful "any unreasonably loud, disturbing or unnecessary noise" was impermissibly vague. 978 F. Supp. at 433. However, the other cases are distinguishable, and we conclude that the Harrisburg ordinance is not void for vagueness.

We begin with the language of the ordinance. Section 3-343.1 is the operative section, making it unlawful, in pertinent part, to make "any loud or unnecessary noise *which may reasonably be anticipated* to annoy, disturb, injure or endanger the comfort, repose, peace, health or safety of others, whether due to volume or duration, or both." (Emphasis added). Section 3-343.2 then goes on, without intending it as a limitation, to define certain "noise-producing acts" that would violate the ordinance.

Facially then, it is not just any noise-producing act that would annoy, disturb, etc., but only one that may reasonably be anticipated to annoy or disturb, etc. This reasonable-person standard saves the ordinance from facial vagueness. *See Twp. of Plymouth v. Hancock*, 236 Mich. App. 197, 201, 600 N.W.2d 380, 381, 382-83 (1999)(ordinance that, in part, made it "unlawful for a person to disturb the public peace and quiet by shouting . . . whistling, loud, boisterous, or vulgar conduct . . . or any other

11

means of amplification at any time or place so as to unreasonably annoy or disturb the quiet, comfort and repose of persons in the vicinity was not vague because it required conduct that unreasonably annoyed, etc.); *see also Sharkey's Inc. v. City of Waukesha*, 265 F. Supp. 2d 984, 992-93 (E.D. Wis. 2003)(reasonable-person standard saves a local noise ordinance from vagueness) (collecting cases).

We note in this regard that three of the five cases Plaintiffs cite to support their vagueness argument turn on the subjective nature of the determination of what was "unnecessary" or "annoying" under the ordinances, *see Fratiello, supra,* 653 F. Supp. at 790; *Dae Woo Kim, supra,* 774 F.Supp. at 170, or what was simply "annoying." *See Lionhart, supra,* 100 F. Supp. 2d at 388-89.

In fact, for its holding *Lionhart* relied on *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), another case Plaintiffs cite as support for their vagueness argument. In *Coates*, the Supreme Court struck down as vague an ordinance making it illegal for three or more persons to assemble on a sidewalk and "conduct themselves in a manner annoying to persons passing by." *Id.* at 611, 91 S.Ct. at 1687, 29 L.Ed.2d at 216. It did so because the ordinance, as interpreted by the state supreme court, had no objective standard to guide the determination of the conduct that would satisfy the element of annoyance. The Court contrasted the case to *Chaplinsky v. New*

12

*Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), where the Court upheld a fighting-words statute that punished "offensive, derisive or annoying words" because, in part, the state courts had essentially imposed a reasonable-person standard on what would constitute fighting words. *Id.* at 613 n.3, 91 S.Ct. at 1688 n.3, 29 L.Ed.2d at 217 n.3.

Because the Harrisburg ordinance imposes the requirement of reasonableness on the elements of the ordinance Plaintiffs find objectionable, that the sound must "annoy" or "disturb" etc, we conclude that the ordinance is not void for vagueness. We turn now to whether the ordinance is overbroad.

"'The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.'" *Tykarsky, supra*, 446 F.3d at 472 (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255, 122 S.Ct. 1389, 1405, 152 L.Ed.2d 403, 424 (2002)).

> A regulation is unconstitutional on its face on overbreadth grounds where there is a "a likelihood that the statute's very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). To render a law unconstitutional, the overbreadth must be "not only real but substantial in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

13

*Saxe v. State College Area School Dist.*, 240 F.3d 200, 214 (3d Cir. 2001). Before declaring the ordinance unconstitutional, however, "we must first determine if it is susceptible to a reasonable limiting construction." *Id.* at 215.

As Plaintiffs have argued, the language of the noise ordinance is very broad. In relevant part, section 3-343.1 renders it unlawful to make "any loud or unnecessary noise which may reasonably be anticipated to annoy, disturb, injure or endanger the comfort, repose, peace, health or safety of others, whether due to volume or duration, or both." Section 3-343.2(b) prohibits the use of loudspeakers or amplifiers "designed or intended to produce or reproduce sound, which is audible upon the public streets for the purpose of commercial advertising or attracting the attention of the public to any thing or activity . . . ." Section 3-343.2(c) prohibits yelling and shouting "on the public streets at any time or place so as to annoy or disturb the quiet, comfort, or repose of persons in any office or in any dwelling or residence, or any persons in the vicinity."

None of these provisions appear to be susceptible to a limiting construction and they all appear to cover a substantial amount of legitimate First Amendment activity or would operate to chill that activity.[6]

---

[6] We note that the Pennsylvania disorderly conduct statute, 18 Pa.C.S. § 5503(a)(2) prohibits the making of "unreasonable noise," but has been construed by the state supreme court as not applying to the exercise of First Amendment rights. *See Commonwealth v. Mastrangelo*, 489 Pa. 254, 261, 414

14

The First Amendment protects the right to stand on the sidewalk to engage in the right of free speech. *Diener v. Reed*, 232 F. Supp. 2d 362, 375 (M.D. Pa. 2002)(Caldwell, J.). It also generally protects the right to use sound amplification. *Saia v. New York*, 334 U.S. 558, 561, 68 S.Ct. 1148, 1150, 92 L.Ed. 1574, 1578 (1948); *Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 491 (4th Cir. 1983); *Commonwealth v. Scott*, 878 A.2d 874, 880 (Pa. Super. 2005). Further, it protects the right to speak in a public forum even if the audience is hostile to the message. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134-35, 112 S.Ct. 2395, 2404, 120 L.Ed.2d 101, 114 (1992)(speech cannot be banned simply because it might offend those who hear it); *Saxe, supra*, 240 F.3d at 209 (government cannot ban speech "solely on the emotive impact" it may have on the listener).

In light of these First Amendment principles, the noise ordinance's broad prohibitions on the following would act on or chill legitimate First Amendment speech: (1) from section 3-343.1, "any loud . . . noise which may reasonably be anticipated to annoy, disturb, injure or endanger the comfort, repose, [or] peace, . . . of others, whether due to volume or duration, or both"; (2) from section 3-343.2(b), the use of loudspeakers or amplifiers "designed or intended to produce or reproduce sound, which is audible upon the public streets for the purpose of . . .

---

A.2d 54, 58 (1980).

attracting the attention of the public to any thing or activity";[7] or (3) from section 3-343.2(c), "[y]elling, shouting . . . or singing on the public streets at any time or place so as to annoy or disturb the quiet, comfort, or repose of persons in any office or in any dwelling or residence, or any persons in the vicinity."[8]

One aspect of the ordinance is not overbroad, the prohibition on the operation of devices that reproduce sound as defined in section 3-343.2(a). That section prohibits the operation of any:

> machine or device designed or intended to produce or reproduce sound in such manner as to disturb the peace, quiet and comfort of residential inhabitants or at any time with louder volume than is necessary for convenient hearing by the person or persons who are in the room, vehicle, or chamber in which such machine or device is operating and who are voluntary listeners thereto. The operating of any such machine or device in such manner as to be plainly audible at a distance of fifty feet from the source shall be prima facie evidence or a violation of this chapter.

The section reaches only a specific set of people, basically people listening to music or other recordings in a room or car.

---

[7] The ordinance is severable. We do not address the prohibition on noise affecting the "health or safety" of others, viewing these terms as being more specific than "annoy" or "disturb." Nor do we address "commercial advertising" found in section 3-343.2(b) because commercial speech is not covered by the overbreadth doctrine. *See The Pitt News v. Fisher*, 215 F.3d 354, 365 (3d Cir. 2000).

[8] Based on the foregoing, we see no need to address the as-applied challenge to the noise ordinance.

16

This language does not extend to a substantial portion of First Amendment activity and hence is not overbroad.

    C.  *The As-applied Challenge to Pennsylvania's Defiant Trespass Statute*.

Plaintiffs also challenge the police's application of Pennsylvania's defiant trespass statute to allow arrest for standing on a privately owned sidewalk used by the public. We agree that this application violates the First Amendment.

As noted, McRae was arrested for refusing to leave a portion of the sidewalk along Front Street owned by Pinnacle Health. This portion of the sidewalk was contiguous with the other portions of the sidewalk, both north and south of the Pinnacle Health buildings, that ran along Front Street. Further, as Captain Baldwin testified, McRae could have used the sidewalk if he were simply walking from one spot to another; he was charged simply for standing there. We also cannot ignore the fact that he had been preaching from this area before he refused to move.

In these circumstances, McRae had a First Amendment right to remain on the sidewalk to preach even if Pinnacle Health held title to the sidewalk. *See United Church of Christ v. Gateway Econ. Dev. Corp.*, 383 F.3d 449, 452-53 (6th Cir. 2004) (First Amendment applies to privately owned sidewalk that is contiguous with a publicly owned sidewalk and which is open to the public for general pedestrian passage); *see also Venetian Casino Resort, L.L.C. v. Local Joint Executive Bd.*, 257 F.3d 937, 943

17

(9th Cir. 2001)(privately owned sidewalk "seamlessly connected to public sidewalks" and dedicated to public use subject to the First Amendment) (collecting cases); *First Unitarian Church v. Salt Lake City Corp.*, 308 F.3d 1114, 1123 (10th Cir. 2002).

    D.   *The Propriety of Preliminary Injunctive Relief*.

We have decided that Plaintiffs are correct in their facial challenge on overbreadth grounds to certain sections of the noise ordinance and that they are also correct in their challenge to the defiant trespass statue as applied. We must now decide if the "extraordinary remedy" of preliminary injunctive relief, *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994), is proper.

Based on the foregoing, Plaintiffs have satisfied the first factor for injunctive relief - they are likely to succeed on the merits - but we must decide if they have satisfied the other factor, that they will suffer irreparable injury if an injunction does not issue.[9]

As noted, "[t]o show irreparable harm, the party seeking injunctive relief must at least demonstrate 'that there exists some cognizable danger of recurrent violation' of its legal rights," *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir.

---

[9] We do not view the third and fourth factors to be relevant here: (1) whether an injunction would harm the defendants more than denying relief would harm the plaintiffs; and (2) whether granting relief would serve the public interest.

18

1997)(quoted case omitted), "'a real or immediate threat'" that the violation will reappear "in the near future." *Id.*

Plaintiffs argue that there is a real danger that the defendants will violate their First Amendment rights at the 2006 PrideFest because the police have done so in the past; four preachers were arrested for defiant trespass at the 2003 PrideFest, and McRae was arrested for defiant trespass and for violating the noise ordinance in 2005.

We do not believe this is sufficient to show that police will violate Plaintiffs' rights at the upcoming PrideFest or that any past violations will be recurrent. The arrests at the 2003 PrideFest for defiant trespass were based on different factual circumstances; according to the complaint in *World Wide Street Preacher's Fellowship v. Reed*, No. 1:CV-04-1127 (M.D. Pa.), the preachers had allegedly been arrested then for violating a fifty-foot buffer zone. And the type of offense exemplified by McRae's arrest on the same charge has only just been litigated in this case. We are confident that at the 2006 PrideFest the city will abide by our analysis in this memorandum and that a final disposition of the noise ordinance can await the end of this litigation.

We will issue an appropriate order.

>                    /s/William W. Caldwell
>                    William W. Caldwell
>                    United States District Judge

Date: July 13, 2006

19

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


THE WORLD WIDE STREET             :
PREACHERS' FELLOWSHIP,
RON McRAE, and MARK A. DIENER,    :
         Plaintiffs
                                  :
         vs.                            CIVIL NO. 1:CV-05-2565
                                  :

STEPHEN R. REED, in his official  :
capacity as Mayor of the City of
Harrisburg; TINA MANOOGIAN-KING,  :
in her official capacity of
Director of Parks and Recreation  :
for the City of Harrisburg and
in her individual capacity; and   :
CAPTAIN BALDWIN, LIEUTENANT ROY,
OFFICER STEPHANIE BARRELET, and   :
OFFICER JANE DOE, in their
official and individual           :
capacities,
         Defendants                :
```

*O R D E R*

AND NOW, this 13th day of July, 2006, it is ordered that Plaintiff's motion (doc. 2) for a preliminary injunction is denied.

<pre>
                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge
</pre>